STATE of Missouri, Respondent,

v.

Cory T. WILLIAMS, Appellant.

No. 70213.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 8, 1997.

N. Scott Rosenblum, Ramona L. Marten, Clayton, for appellant.

Jeremiah W. Nixon, Cheryl A. Caponegro, Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Cory Williams, appeals from the judgment of convictions, entered pursuant to jury verdicts, of second degree murder (Count I), two counts of armed criminal action (Counts II and IV), first degree robbery (Count III), receiving stolen property (Count V), two counts of resisting arrest (Counts VI and X), stealing a motor vehicle (Count IX), first degree burglary (Count XI), and second degree burglary (Count XII). He was sentenced as a prior offender to terms of imprisonment of life on Count I, five years on each of Counts II and IV, and twenty years on Count III, each of these sentences to be served consecutively to the other; and to terms of imprisonment of five years on each of Counts V, IX, XI, and XII, and one year on each of Counts VI and X, these sentences to be served concurrently. We affirm.

The evidence established that on November 15, 1994, at around midnight, defendant approached a parked, white minivan in which a 72–year–old woman was sitting in the driver's seat. Pointing a gun at her and her passenger, he forced them out of the van and drove off.

On November 16, 1994, around 2:00 a.m., a police officer observed a white van tailgating a green truck. Although the officer attempted to follow the vehicles, he lost them. Shortly thereafter, he heard a dispatch about shots fired and responded to the location of the shots. When he arrived at the scene, the green truck was in the driveway to a residence and the white van was parked on the street in front of the residence. Defendant was in the driver's seat of the van. Defendant's associate, Darney Towers, walked from the house and got into the van. They drove off.

Meanwhile, the driver of the green truck, Steven McFarland, was lying on the porch of the residence, bleeding. The driver's side window of the green truck was shattered and keys were hanging in the lock of the driver's side door. On the driveway between the truck and the house, .25 caliber shell casings were found; and a .380 shell casing was discovered near the porch. McFarland died from a gunshot wound to the neck.

A second police officer pursued the van as it left the residence. He observed two men in the van. Towers was driving and defendant was in the passenger seat reclining all the way back. The officer gave chase until the van crashed into a tree. When Towers got out of the van and ran, the officer chased him on foot until he heard shots coming from the van. He turned and saw defendant hanging over the front passenger side of the van. Defendant turned and ran away. The officer continued his pursuit of Towers and captured him.

A search of the van uncovered two semi-automatic weapons, a .380 caliber gun and a .25 caliber gun. A spent .25 caliber shell casing was discovered between the front bucket seats. Defendant's finger prints were found on the van.

At about 3:30 a.m. that same morning, defendant stole a black Camaro automobile which the owner had left running in the driveway of his house. A third police officer observed the Camaro traveling at a high rate of speed on I–170 and gave chase with his red lights flashing. Although the police officer lost the Camaro, he radioed the last known position of the car and other police officers took up the chase. Defendant abandoned the vehicle on an exit ramp and ran away on foot. Defendant's fingerprints were found on the Camaro.

A fourth police officer organized a manhunt for defendant. He observed defendant use a pay phone and then walk down the street; and he followed. When defendant saw the officer trailing him, he broke into a run, despite the officer's identifying himself as a police officer and ordering defendant to stop.

At about 7:30 a.m., defendant broke into a house by breaking the glass in a window over the kitchen sink. The occupant of the house was sitting in the kitchen. She picked up the curtain rod that had fallen off the window and poked defendant, telling him to go away. Although he told her he wouldn't hurt her, she ran out of the house. When she returned home, she found her purse opened with money on the floor and her sliding glass door ajar. Defendant's fingerprint was discovered in the residence.

Defendant then broke into another house on the same street by forcing his way through a garage door and kicking in the door from the garage to the kitchen. He went through the closet and drawers in the master bedroom, scattered clothing on the floor, and used a first aid kit which was kept in the closet. He also removed a shotgun from the closet and placed it in another bedroom. He attempted, unsuccessfully, to start an automobile which was kept in the garage and his fingerprints were found on that vehicle. Sometime after 9:00 a.m., the police located defendant hiding under the bed in the master bedroom. He was wearing clothing taken from the house. His wrist was cut and he had been shot in the arm.

Defendant testified at trial. He stated that Towers was already in possession of the van when he picked him up. He asserted that he was passed out in the van when Towers pursued and murdered McFarland. He stated that Towers shot him in the arm after shooting McFarland. He admitted to taking the Camaro and breaking into two houses. Although he gave an audio taped statement to the police implicating himself in the crimes of which he was convicted, his position at trial was that the police had coerced him to confess. Defendant's audio taped statement was played for the jury at trial and transcripts of the tape were also provided.

■ In his first point, defendant contends the trial court erred in permitting the burglary victim who confronted him in her kitchen to testify by way of videotaped deposition because she was going to be out of town at the time of the trial. He argues Section 492.303 RSMo 1994 and the corresponding Rule 25.14 required a hearing upon application of counsel for the trial court to determine that the deposition was necessary to preserve the victim's testimony.

■ Although the State complied neither with Rule 25.14 nor with Section 492.303, defendant was not prejudiced by the admission of the videotaped deposition of the burglary victim. On direct examination, defendant testified as follows:

[DEFENDANT]: ... When I went through the bushes I fell and rolled down and fell into the creek. I got up and I walked all the way down the creek and I ended up behind these other houses, which was [the victim's ] house and by that time I was really cold still 'cause it was a cold morning, it was winter.

Only thing I had was a vest and sweater on and those were soaking wet. I then went to the back window. There was a back sliding door and I had tapped on the door.

I don't know why I thought there wasn't nobody there. So I went through the window. I tried to go through the window that's when the lady appeared in the window.

[DEFENSE COUNSEL]: What did you do then?

[DEFENDANT]: She then seemed frightened. I told her I didn't want to hurt you, I just—just needed bandages and things and just use the phone. By then she just dropped stuff and just ran.

[DEFENSE COUNSEL]: You wanted to get in the house to get some bandages?

[DEFENDANT]: Yes.

\*      \*      \*      \*      \*      \*

[DEFENSE COUNSEL]: And did you take some bandages?

[DEFENDANT]: No, not out of that house. I just washed my wrist off in some water 'cause it was really bleeding. I washed my arm off 'cause my arm was bleeding real bad.

In this testimony, defendant admitted to committing the burglary. Reversible error cannot be predicated upon the admission of evidence which the defendant later confirms

by his own testimony. *State v. Holland,* 781 S.W.2d 808, 811 (Mo.App.1989). Thus, defendant was not prejudiced by the admission of the videotaped deposition testimony of the burglary victim. Defendant's first point is denied.

■ In his second point, defendant asserts the trial court erred in permitting the jury to use transcripts as an aid to following defendant's audio taped statement to the police. He claims the audiotape was unclear, the transcript was inaccurate, and the transcript was someone else's interpretation of his taped statement.

■ Transcripts of a tape recording may be used if portions of the tape are inaudible or there is a need to identify the speakers. *State v. Plummer,* 860 S.W.2d 340, 344 (Mo.App. E.D.1993). The admissibility of transcripts of tape recordings is within the trial court's discretion. *Id.* In order to demonstrate reversible error, a defendant must show that the admission of the transcripts prejudiced the case. *Id.*

Here, the trial court held a hearing on the admissibility of the transcripts of defendant's taped statement. The police officer who took defendant's statement testified that the transcripts accurately reflected defendant's statement and would assist the jury in understanding what was being said and in identifying the speakers. Pursuant to the State's suggestion, the trial court gave a cautionary instruction to the jurors instructing them to disregard any portion of the transcripts which did not "correctly reflect the contents of the tape recording" and to rely on what they heard rather than on what they read. The transcripts were not sent to the jury room during deliberations. This procedure was within the discretion of the trial court. *See State v. Fleischer,* 873 S.W.2d 310, 314 (Mo.App. S.D.1994). Defendant's second point is denied.

In his third point, defendant contends the trial court committed plain error when it admitted statements he made to the police because the statements were the product of physical and psychological coercion. In his fourth point, defendant asserts plain error in the trial court's permitting the State to argue in closing argument that he could have been

the shooter of McFarland. In his fifth point, defendant challenges the sufficiency of the evidence to support his convictions of first degree robbery and of two related counts of armed criminal action and of felony murder in the second degree which was based on a finding of guilt on the robbery and armed criminal action charges. We have reviewed the record and find no jurisprudential purpose would be served by a written opinion on these points. Points three, four, and five are denied pursuant to Rule 30.25(b).

■ In his final point, defendant claims the trial court committed plain error when it submitted the verdict directing instruction for first degree robbery because it incorrectly included paragraph Fifth from MAI–CR 3d 323.02 and failed to define serious physical injury. Defendant did not raise these objections at trial and did not include them in his motion for new trial and requests we review for plain error under Rule 30.20.

The challenged verdict director was patterned on MAI–CR 3d 304.04 and read in pertinent part:

### INSTRUCTION NO. 8

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 16, 1994, in the County of St. Louis, State of Missouri, the defendant or Darney Towers took a set of keys, which was property in the possession of Steven McFarland, and

Second, that defendant or Darney Towers did so for the purpose of withholding it from the owner permanently, and

Third, that defendant or Darney Towers in doing so used physical force on or against Steven McFarland for the purpose

of forcing Steven McFarland to deliver up the property, and

Fourth, that in the course of taking the property, the defendant or Darney Towers caused serious physical injury to Steven McFarland, and

Fifth, that Darney Towers was a participant with defendant in the commission of the offense,

then you are instructed that the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Sixth, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defendant acted together with or aided Darney Towers in committing that offense,

then you will find the defendant guilty under Count III of robbery in the first degree. . . .

Pursuant to MAI–CR 3d 323.02, Notes on Use 2, "[i]f someone other than the defendant committed some or all of the acts described in paragraphs First, Second, and Third, then this instruction should not be used, but rather an instruction based on MAI–CR 3d 304.04 should be given" and paragraph Fifth should not be used. The State concedes that it was error to include paragraph Fifth of MAI–CR 3d 323.02 in the verdict director.

■ The giving of an instruction in violation of the Notes on Use under MAI–CR constitutes error, its prejudicial effect to be judicially determined. *State v. Livingston,* 801 S.W.2d 344, 348 (Mo. banc 1990). Rule 28.03 provides as follows:

Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. . . .

Defense counsel's failure to object is a factor to be considered in determining prejudice. *Livingston,* 801 S.W.2d at 349.

While the instruction was flawed in that it did not follow the guidelines of MAI–CR 3d 323.02, a reasonably intelligent and attentive juror would not have been misled by the instruction. Paragraphs First through Fourth required the jury to find that certain acts were performed by "defendant or Darney Towers." Although paragraph Fifth was incorrectly included in the instruction, it merely reiterated the requirements of the first four paragraphs; namely, that "Darney Towers was a participant with the defendant in the commission of the offense." The insertion of this phrase in the instruction was not prejudicial error because it did not tend to mislead the jury.

■ Defendant next argues that the instruction was improperly submitted to the jury because it lacked a definition of "serious physical injury." Serious physical injury, as defined in MAI–CR 3d 333.00, "[m]eans physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body."

Defendant concedes that because McFarland died from the gunshot wound, he may not have been prejudiced by the failure of the instruction to define serious physical injury. We agree. In a murder case, where the victim has died from injuries inflicted by the defendant, the jury could readily infer that the injury created "a substantial risk of death."

The inclusion of paragraph Fifth in violation of the Notes on Use under MAI–CR and the absence of the definition of serious physical injury in the verdict directing instruction were not prejudicial to defendant and did not constitute plain error. Defendant's sixth point is denied.

The judgment of the trial court is affirmed.

AHRENS, C.J., and CHARLES B. BLACKMAR, Senior Judge, concur.