STATE of Missouri, Respondent,

v.

**Michael SUTTON, Appellant.**

No. ED 93223.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 21, 2010.

Nancy A. McKerrow, Columbia, MO, for appellant.

Chris Koster, Atty. Gen., Terrence M. Messonnier, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Presiding Judge.

### Introduction

The defendant, Michael Sutton, appeals his convictions after trial for forcible sodomy, felonious restraint and two counts of armed criminal action. Sections 566.060 RSMo 2007, 565.120 RSMo 2000, and 571.015 RSMo 2000. The defendant raises two points on appeal: 1) the State did not establish a proper chain of custody for the admission of DNA and fingerprint evidence because the State failed to show that the items had not been tampered with or contaminated; and 2) the verdict subjected the defendant to double jeopardy as felonious restraint was incidental to the commission of forcible sodomy and was not a crime in and of itself. We affirm.

### Factual Background

We view the facts in the light most favorable to the verdict.[1] On February 26, 2008, the then twenty-five year old victim worked as a property manager at an

---

1. *State v. Johnson,* 284 S.W.3d 561, 567 n. 2 (Mo. banc 2009).

apartment complex (hereinafter, "Complex") in O'Fallon Missouri. At about 9:30 a.m., the defendant went to the Complex's office and spoke with the Victim. The Victim had never previously met the defendant. The defendant told the Victim that he was getting a divorce and needed an apartment for himself and his children. As is her practice, the Victim asked the defendant for an ID. The Victim wrote down the defendant's information on a sheet of paper called an "information card." The Victim showed the defendant an apartment, but he wanted to think about it over lunch.

At about 1:00 p.m., the Victim went to a hospital after learning that her grandmother had a heart attack. The Victim returned to the Complex at 4:00 p.m. The Complex's service manager told the Victim that the defendant had stopped by shortly after 1:00 p.m. to see another apartment. The service manager offered to show an apartment to the defendant, but he indicated that he would come back when the Victim returned.

The defendant returned to the Complex about 5:00 p.m. The Victim then showed him a different apartment. When the Victim and the defendant were in the apartment's master bedroom, the door slammed and the defendant pulled out a black-handled folding knife. The defendant said to the Victim, "now you are going to do something for me, bitch." The defendant put the knife to the Victim's throat and pushed her toward the back wall. The Victim reminded the defendant about her grandmother and asked him why he was doing this. The defendant then lowered his pants and pushed the Victim to her knees.

The defendant told the Victim to perform oral sex, and if she did not, he would either slit her throat or rape her. The Victim complied; the defendant ejaculated. The Victim spit the sperm on her hand,

wiped it on her pant's leg, and threw it on the carpet. The defendant then ran out of the apartment. The Victim, in hysterics, went to a neighbor's apartment, who called 911. A police officer arrived and secured the apartment.

The Victim was taken to the hospital by ambulance. Detective James Klingler asked a paramedic to put a glove on the Victim's hand to "protect potential evidence." At the hospital, the sexual assault nurse examiner, Sandra Miederhoff, performed a rape kit on the Victim. Ms. Miederhoff also collected oral and hand swabs, an oral floss, a blood sample from the Victim, and the Victim's clothing. After packaging and sealing everything, Ms. Miederhoff turned the evidence over to Detective Klingler.

The Victim told Detective Klingler at the hospital about the "information card" she completed when the defendant first came to the Complex. Another detective prepared a photographic array. The Victim and the Complex's service manager identified the defendant from this array.

At around 8:00 p.m., Detective Klingler received a call from an individual claiming to be the defendant in response to the officers having gone to the defendant's parents' residence. The defendant gave his date of birth and social security number. The defendant then claimed that he was over 500 miles away and would have to drive through two states to get back. The defendant claimed his wife or his mother-in-law was behind the allegations, even though the Victim did not know the defendant's wife.

The following morning, Sergeant Larry Ellard saw the defendant's minivan near his wife's residence. Sergeant Ellard began following the defendant's minivan. Sergeant Ellard apprehended the defen-

dant after he tried to "shake" or evade the officer.

The day of the crimes, Tiffany Fischer, a crime scene investigator, processed the crime scene and was able to recover the defendant's fingerprint from the bedroom door. Ms. Fischer also cut out and seized a part of the carpet and took a swab of a "chunky, whitish substance" from the carpet. Another crime scene investigator, Amy Pratt, examined the intact and uncompromised carpet seized by Ms. Fischer and used a fluorescent light to determine what part might have body fluids. Ms. Pratt cut out a section of the carpet that appeared to contain fluids and sealed this section in an evidence bag.

Scott Schroeder, a forensic scientist working for the St. Charles County Sheriffs' Department, received the sealed rape kit and made a blood stain card from the blood sample, that he sealed. Mr. Schroeder also examined the clothing and carpet and made cuttings based upon a color test for possible body fluids. The evidence was packaged and sealed before being sent to the Missouri Highway Patrol. Subsequently, Detective Klingler took buccal swabs from the defendant and these were also sealed by Mr. Schroeder.

Ruth Montgomery, a criminalist working for the Missouri Highway Patrol Crime Laboratory, performed DNA analysis on the blood stain card, the buccal swabs, and the cuttings from the Victim's pants and carpet. The analysis showed that the DNA developed from the sperm on the pants and carpet was consistent with the defendant's DNA profile. Ms. Montgomery did not test the other items. After the defendant was indicted for forcible sodomy, felonious restraint and two counts of armed criminal action, the trial court granted the defendant's motion to conduct his own testing by independent lab, Genetic Technologies, Inc.

At trial, the defendant testified that he went to the Complex on February 26, 2008. The defendant also testified that when the Victim showed him an apartment the morning of February 26th, that he agreed with the Victim to return later to the Complex with some vicodin pills in exchange for "a sexual act." The defendant acknowledged returning to the Complex at about 1:00 p.m. and 5:00 p.m. The defendant further testified that after he returned to the Complex at 5:00 p.m., he went to an apartment with the Victim and then masturbated and ejaculated in anticipation of having oral sex. The defendant stated that after he heard a man's voice, he got scared and ran out of the apartment because he had vicodin pills with him. The defendant denied putting his penis in the Victim's mouth, using any force or that he had a weapon. The defendant admitted writing a letter to the prosecutor giving his version of the facts, but he did not mention the Victim's alleged agreement to exchange sex for pills.

The jury found the defendant guilty of forcible sodomy, felonious restraint, and two counts of armed criminal action. The trial court sentenced the defendant to consecutive terms of thirty years for the sodomy conviction, seven years for the felonious restraint conviction, and fifteen years for each armed criminal action conviction. The defendant raises two points on appeal.

*Discussion*

*Point 1*

■ Defendant argues that the trial court erred in admitting the rape kit, buccal swabs taken from the defendant, the victim's shirt and pants, carpet from the crime scene and the defendant's fingerprint also found at the crime scene. The defendant contends that the State did not establish a proper chain of custody for the

admission of this evidence because the State failed to show that the items had not been tampered with or contaminated. The record is unclear if the defendant properly preserved his objections to the evidence. This court will review the trial court's rulings as if the defendant had properly preserved his objections.

"The standard of review for the admission of evidence is abuse of discretion." *State v. Reed,* 282 S.W.3d 835, 837 (Mo. banc 2009). For an evidentiary error to cause reversal, "prejudice must be demonstrated." *Id.* An abuse of discretion in admitting challenged evidence is reversible error only if the admission was so prejudicial that it deprived the defendant of a fair trial. *State v. Dizer,* 119 S.W.3d 156, 164 (Mo.App. E.D.2003).

A trial court's ruling "whether a sufficient chain of custody has been established for the admission of an exhibit is a matter within the sound discretion of the trial court." *State v. Link,* 25 S.W.3d 136, 146 (Mo. banc 2000). Proving up the chain of custody of an exhibit provides the court with the assurance "that the exhibits were in the same condition when tested as when the exhibits were originally obtained." *Id.;* *State v. Dawson,* 985 S.W.2d 941, 953 (Mo.App. W.D.1999)(proponents of exhibit must provide court with reasonable assurance that exhibits were not tampered with or contaminated). "[P]roof of a chain of custody does not require proof of hand-to-hand custody of the evidence, nor proof that eliminates all possibility that the evidence has been disturbed." *Link,* 25 S.W.3d at 146. "The trial court may assume, absent a showing of bad faith, ill will or proof, that officials having custody of exhibits properly discharged their duties and that no tampering occurred." *Id.*

We note initially that the Victim in this case clearly identified her shirt and pants, and Ms. Fischer identified the carpet that she cut out and seized from the apartment. When an exhibit is clearly identified at trial even as modified as the exhibits here were by the officers cutting out patches, chain of custody is irrelevant. *State v. Gott,* 191 S.W.3d 113, 117 (Mo. App. S.D.2006); *State v. Spencer,* 62 S.W.3d 623, 627 (Mo.App. E.D.2001)(no reason to point out all persons who had custody of the evidence under police custody when victim identified garment). A defendant can cross-examine the State's witnesses as to any weaknesses with a victim's identification of the exhibits and the final determination is for the jury to weigh such evidence. *Id.*

Missouri has long recognized the legal principle that reversible error cannot be predicated upon the admission of evidence that is later confirmed by the defendant's own testimony. *State v. Williams,* 948 S.W.2d 429, 431–32 (Mo.App. E.D. 1997); *State v. Holland,* 781 S.W.2d 808, 811 (Mo.App. E.D.1989)(no error in admitting copies of checks as defendant admitted depositing them). In *Williams,* the defendant was not entitled to complain about prejudice in the admission of a videotaped deposition of the burglary victim, where he admitted committing the burglary. 948 S.W.2d at 431–32. *See State v. Sanders,* 473 S.W.2d 700, 703–04 (Mo.1971)(error cannot be predicated upon evidence of a defendant's escape when confirmed by defendant's own testimony); *State v. Eastburn,* 950 S.W.2d 595, 604–05 (Mo.App. S.D.1997)(double hearsay testimony of murdered victim confirmed by defendant's testimony); *State v. Swigert,* 852 S.W.2d 158, 163 (Mo.App. W.D.1993)(authenticity of letter confirmed by defendant); *State v. Cannady,* 655 S.W.2d 826, 827 (Mo.App.1983)(no error for allowing witness to testify that she identified defendant's accomplice where

defendant admitted accomplice committed crime as he was merely a bystander).

At trial, the defendant testified in part as follows:

Q. What was your understanding of what you and [the Victim] were going to do when you came back?

A. I was supposed to bring pills back for a sexual act, that she never did. Mainly, the Vicodin pain killers.

. . . .

Q. What happened when you [and the Victim] got into the apartment [where the crimes occurred]?

A. She showed me the entire apartment. When we got to the back room that's when I assumed we were going to do what we had discussed.

Q. And what did you do?

A. I wanted oral sex. I started to masturbate in anticipation for what she was going to do. And I ejaculated. I heard a male's voice outside the door and I left. . . .

Even assuming that the State's chain of custody failed to provide a reasonable assurance that the seized evidence had not been tampered with or contaminated, this court still finds no prejudice in the admission of the challenged evidence. The defendant directly confirmed by his testimony that: 1) he was physically present in the apartment which confirmed evidence of his fingerprint; and 2) he ejaculated in the apartment which confirmed evidence of his semen in the apartment. The defendant cannot now predicate error upon the admission of evidence that he confirmed by his own testimony. *E.g., Williams,* 948 S.W.2d at 431–32.

Here, the defendant's consent defense in essence neutralized the previously disputed evidence. *State v. McKee,* 811 S.W.2d 498, 500 (Mo.App.1991)(sexual consent defense neutralized prejudice of bed sheet and photograph of apartment). "The evidence establishes precisely what the defendant conceded." *Id.* As the court finds no prejudice under these facts, the defendant's first point is denied.

*Point 2*

In his second point, the defendant argues that the trial court erred in accepting the jury's guilty verdicts for felonious restraint and the associated armed criminal action charge because the verdict subjected the defendant to double jeopardy as felonious restraint was incidental to the commission of forcible sodomy and was not a crime in and of itself. The defendant concedes that he failed to raise this objection either at trial or in his motion for a new trial. Rule 29.11(d).

 Generally, a defendant must raise a constitutional issue at the earliest opportunity. *State v. Dennis,* 153 S.W.3d 910, 918 (Mo.App. W.D.2005). "Nevertheless, the right to be free from double jeopardy is a constitutional right that goes 'to the very power of the State to bring the defendant in the court to answer the charge brought against him.'" *Id.* Because there is an exception to the general waiver rule "when the court 'can determine from the face of the record that the court had no power to enter the conviction,'" we review for plain error. *Id. See* Rule 30.20.

 "The Double Jeopardy Clause guarantees that one will not be subjected to multiple punishments for the same offense, and it prevents the state from splitting a single crime into separate parts and pursuing several prosecutions." *State v. Garnett,* 298 S.W.3d 919, 922 (Mo.App. E.D.2009). "In determining double jeopardy, Missouri follows the separate or several offense rule rather than the same transaction rule." *Id.* If the legislature intended to punish the conduct under more

than one statute, "a defendant may be convicted of more than one offense based on the same conduct" without offending the double jeopardy clause. *State v. White*, 14 S.W.3d 121, 125 (Mo.App. W.D.2000)(citing, *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992)). Because the statute for forcible sodomy, Section 566.060, and the statute for felonious restraint, Section 565.120, are silent as to whether the legislature intended to punish this same conduct under both statutes, we must look to Section 556.041 RSMo 2000, the general cumulative statute. *Id.*

Section 556.041 provides that when the same conduct by a person may establish the commission of more than one crime, the person may be prosecuted for each such offense. However, this statute does set forth four exceptions for permitting the State to prosecute a defendant for each offense. Section 556.041(1)(2)(3)(4). The first exception, at issue for the present case, provides that a defendant may not be convicted of more than one offense if "[o]ne offense is included in the other, as defined in section 556.046." Section 556.041(1).

Section 556.046(1) codifies the lesser included offense definition set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and is referred to as the same elements test. *Peiffer v. State*, 88 S.W.3d 439, 443 (Mo. banc 2002); *McTush*, 827 S.W.2d at 188. Under this test, "[i]f each offense requires proof of a fact that the other does not, then the offenses are not lesser included offenses, notwithstanding a substantial overlap in the proof offered to establish the crimes." *McTush*, 827 S.W.2d at 188. The application of this review is straightforward as the elements of the offenses are compared. *Id.* "If each offense is established by proof of an element not required by the other offense, then neither offense is an included offense within the

meaning of Section 556.046.1(1) and the limitation on convictions for multiple offenses codified at Section 556.041(1) does not apply." *Id.*

Even if, as suggested by the defendant, the facts of this case show that the defendant's forcible compulsion also created a substantial risk of serious physical injury for the Victim, the elements and not the facts in the case, determine whether double jeopardy was violated. The analysis "focuses on the statutory elements of the offenses rather than upon the evidence actually adduced at trial." *McTush*, 827 S.W.2d at 188. *See State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002)("[t]he elements of the two offenses must be compared in theory, without regard to the specific conduct alleged.").

Although the defendant asserts that "the State was not required to prove anything but the forcible sodomy to obtain a conviction for felonious restraint," the defendant does concede that "forcible sodomy and felonious restraint do not have identical elements." Section 566.060.1 RSMo 2007 provides that "[a] person commits the crime of forcible sodomy if such person has deviate sexual intercourse with another person by the use of forcible compulsion." Whereas, "[a] person commits the crime of felonious restraint if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty and exposes him to a substantial risk of serious physical injury." Section 565.120.1 RSMo 2000.

This court has previously rejected a double jeopardy argument for forcible sodomy and felonious restraint convictions. *State v. Hill*, 817 S.W.2d 609, 610 (Mo.App. E.D. 1991). This court held that review of the elements of forcible sodomy and felonious restraint demonstrates that felonious restraint requires proof of facts not required to prove forcible sodomy and forcible sodomy requires proof of facts not required to

prove felonious restraint. *Id.* (citing sections 565.120 and 566.060 RSMo 1986).[2] *See also State v. Smith,* 902 S.W.2d 313, 314–16 (Mo.App. E.D.1995) (reversing conviction for felonious restraint because the state failed to present sufficient evidence that defendant's actions, including sodomy, exposed the victim to a substantial risk of serious physical injury).

To convict a person of forcible sodomy, that person must engage in deviate sexual intercourse. This element is not required for a felonious restraint conviction. To convict a person of felonious restraint, the restraint must expose the victim to a substantial risk of serious physical injury. This element is not required for a forcible sodomy conviction.[3] Forcible sodomy and felonious restraint each has a requisite element not required by the other respective crime.

The defendant's convictions for forcible sodomy and felonious restraint did not violate his protection against double jeopardy. The defendant's second point is denied.

### Conclusion

The judgment is affirmed.

MARY K. HOFF, and PATRICIA L. COHEN, JJ., concur.

---

**2.** The statute for sodomy, section 566.060.1 RSMo 1986, provided that a person commits the crime of sodomy if "[h]e has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion." The difference between the language of section 566.060 RSMo 2007 quoted above and the statute's language in 1986 does not alter the applicability of *Hill* to the present case. The statute for felonious restraint, section 565.120, has not been amended since its effective date of January 1, 1979.

---

**3.** Under section 566.060.2(1), the authorized term of imprisonment for forcible sodomy is increased to life or not less than ten years' imprisonment if in the course of committing forcible sodomy the actor displays a deadly weapon or dangerous instrument in a threatening manner. In the present case, the defendant was charged and found guilty of displaying a dangerous instrument in a threatening manner.