In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

 STATE OF MISSOURI, ) No. ED108643
 )
 Respondent, ) Appeal from the Circuit Court of
 ) the City of St. Louis
 vs. )
 ) Honorable David L. Dowd
 PAUL L. DEROY, JR., )
 )
 Appellant. ) Filed: April 27, 2021

 Introduction

 Paul DeRoy (“Defendant”) appeals from the judgment of the trial court, which was

entered upon a jury verdict convicting him of first-degree murder, armed criminal action,

stealing, and first-degree tampering. Defendant brings four points on appeal. First, Defendant

contends the trial court erred by entering a judgment of conviction against him for first-degree

murder and armed criminal action because the State did not prove beyond a reasonable doubt he

caused Ricardo Comparini’s (“Victim”) death after deliberation. Second, Defendant argues the

trial court erred by entering a judgment of conviction against him for both stealing and first-

degree tampering because doing so violated his right to be free from double jeopardy. Third,

Defendant contends the trial court erred by entering a judgment of conviction against him for

stealing because a variance existed between the first-degree robbery offense charged in the

indictment and the lesser-included stealing offense submitted to the jury. Finally, Defendant
argues the trial court erred by denying his motion to dismiss the charges against him because the

State destroyed potentially exculpatory evidence on his cell phone in bad faith. We affirm.

 Factual and Procedural Background

 On appeal from a jury-tried case, we view the facts in the light most favorable to the

jury’s verdict. State v. Kilgore, 505 S.W.3d 362, 369 (Mo. App. E.D. 2016). The evidence

adduced at trial established Defendant and Victim resided together at Victim’s home. On

February 22, 2016, Victim was found beaten to death in his home. Victim’s autopsy revealed he

died of “cranial cerebral blunt trauma,” and his death was ruled a homicide. Victim’s face was

swollen and bruised. Victim’s skull was fractured in multiple places. Victim’s scalp was

“profusely covered with blood,” which indicated he sustained “multiple injuries to the head” and

suffered “a lot of trauma.” Victim had patterned injuries on his back, neck, and scalp, which

were likely caused by an object. Victim had defensive injuries; the back of Victim’s left hand

and Victim’s elbows were swollen and bruised. The medical examiner performing Victim’s

autopsy noted, “There was so many injuries, I couldn’t count them.”

 On February 21, 2016, Defendant exchanged text messages with his then-girlfriend,

Becky Rodgers. Early in the day, Defendant and Rodgers texted about ordinary things, but

Defendant stopped responding to Rodgers’ texts in the early afternoon. Defendant sent Rodgers

“kind of strange” texts in the evening. One text was “jumbled.” Another said, “disappointment

ever cause in your life for any.” That evening, Defendant called his friend Brian Schwartz and

asked if he could spend the night. When Defendant arrived at Schwartz’s home, his demeanor

“was a little bit off” and he was driving Victim’s vehicle. The morning of February 22, 2016,

Defendant texted Rodgers saying, “I just wanted to say I’m sorry. Please forgive me. I love you

 2
and move on.” He also messaged her saying, “You’ll soon want to forget my name, but I love

you dearly.”

 Around 3:00 p.m. on February 22, 2016, the police were dispatched to Victim’s residence

where they found Victim deceased and lying on the floor. The police believed Victim died

February 21, 2016. The police observed Victim’s head had been bashed into a door and a heat

vent. Victim was covered in blood, and there was blood throughout the house. The police found

a typewritten note believed to be authored by Victim telling Defendant they should “part ways.”

Victim’s vehicle was missing from the house. While at the scene, the police noticed an

individual “very closely” resembling Defendant driving Victim’s missing vehicle outside

Victim’s home. The State filed a complaint alleging Defendant committed first-degree

tampering by knowingly and unlawfully operating Victim’s vehicle without Victim’s consent

and put a warrant out for Defendant’s arrest.1

 Rodgers saw Defendant the night of February 22, 2016, at Schwartz’s home. She noticed

Victim’s vehicle was parked out front. She thought it was “odd” Defendant drove Victim’s

vehicle to Schwartz’s home because, although it was not unusual for Defendant to drive Victim’s

vehicle, she knew Defendant and Victim had been fighting. Defendant and Victim’s relationship

was “rocky”; sometimes they were good friends and sometimes they would fight. Six days

before Victim’s death, Victim sent Rodgers a text saying Defendant dragged him into a bedroom

at his home, he was “scare[d] . . . to death” of Defendant, and he hoped Defendant would move

out soon. Two days before Victim’s death, Victim sent Rodgers a text saying he felt he could

confront Defendant face-to-face because “as scary as that can be . . . I trust [Defendant] won’t

1
 The State also charged Defendant with driving without a valid license. The jury acquitted Defendant of this
charge.

 3
hurt me.” The morning of February 23, 2016, Rodgers learned Victim was deceased. She called

Defendant and asked him what happened. Defendant told Rodgers he “just snapped.”

 The police arrested Defendant on February 24, 2016. After Defendant’s arrest, the police

seized his clothes and obtained his consent to collect buccal swabs and fingernail clippings. The

police found Victim’s DNA in blood stains on Defendant’s shirt and pants. The police also

found Victim’s DNA in Defendant’s fingernail clippings. The police seized Defendant’s cell

phone. Defendant did not give consent for the police to search his cell phone. Defendant’s cell

phone was damaged while the police attempted to extract information from it.

 Several days later, Victim’s vehicle was found parked in front of an apartment building

one mile from Schwartz’s home. Inside the vehicle, the police found Victim’s wallet, Victim’s

watch, a pair of socks, a cigarette, and a plastic bag which all contained blood stains. The blood

on Victim’s wallet, Victim’s watches, the socks, the cigarette, and the plastic bag contained

Victim’s DNA. Defendant’s DNA was found on Victim’s wallet and watches.

 Both Victim’s and Defendant’s DNA was found in blood stains in the bathroom sink and

faucet at Victim’s home. Both Victim’s and Defendant’s DNA was also found on several

cigarette butts, a bottle, a glass, and a mug at Victim’s home. Defendant’s clothes and shoes and

a glove containing Defendant’s DNA were found damp in the washing machine at Victim’s

home.

 Defendant was charged with: (1) first-degree murder for knowingly causing Victim’s

death after deliberation by striking Victim; (2) armed criminal action for committing first-degree

murder of Victim while using a dangerous weapon; (3) first-degree robbery for forcibly stealing

Victim’s wallet and watches; and (4) armed criminal action for committing first-degree robbery

of Victim’s wallet and watches while using a dangerous weapon.

 4
 Before trial, Defendant moved to dismiss the charges against him because the police

damaged his cell phone while attempting to extract information from it after his arrest.

Defendant argued the location data on his cell phone was potentially exculpatory and could have

shown he was not at Victim’s home when Victim was killed. Defendant argued the State acted

in bad faith by allowing his phone to be destroyed because the police failed to document his cell

phone was seized after his arrest in their report. The trial court denied Defendant’s motion to

dismiss.

 A jury trial was held November 4-8, 2019. At the close of all evidence, the jury was

instructed on the crimes charged. Even though Defendant was charged with committing first-

degree robbery by forcibly stealing Victim’s wallet and watches, the jury was instructed to

consider whether Defendant forcibly stole Victim’s vehicle. At Defendant’s request, the jury

was also instructed on the lesser-included offense of stealing Victim’s vehicle. Defendant did

not object to the instructions submitted to the jury.

 The jury found Defendant guilty of first-degree murder, armed criminal action, stealing,

and first-degree tampering. Defendant was sentenced to life without parole for first-degree

murder, life for armed criminal action, one year for stealing, and seven years for first-degree

tampering.

 This appeal follows.

 Discussion

 Point I: Sufficiency of the Evidence for First-Degree Murder and Armed Criminal Action

 Defendant argues the trial court erred by entering a judgment of conviction against him

for first-degree murder and armed criminal action because the State did not prove beyond a

reasonable doubt he caused Victim’s death after deliberation.

 5
 “[T]his Court’s review of the sufficiency of the evidence is limited to whether the State

has introduced sufficient evidence for any reasonable juror to have been convinced of the

defendant’s guilt beyond a reasonable doubt.” State v. Nash, 339 S.W.3d 500, 508-09 (Mo. banc

2011). “This is not an assessment of whether the Court believes that the evidence at trial

established guilt beyond a reasonable doubt but rather a question of whether, in light of the

evidence most favorable to the State, any rational fact-finder could have found the essential

elements of the crime beyond a reasonable doubt.” Id. (internal quotations omitted).

 A person commits first-degree murder when he or she “knowingly causes the death of

another person after deliberation upon the matter.” § 565.020.1.2 Deliberation is “cool reflection

for any length of time no matter how brief.” § 565.002(3). “Deliberation is not a question of

time—an instant is sufficient—and the reference to ‘cool reflection’ does not require that the

defendant be detached or disinterested. Instead, the element of deliberation serves to ensure that

the jury believes the defendant acted deliberately, consciously and not reflexively.” State v.

Perkins, 600 S.W.3d 838, 846 (Mo. App. E.D. 2020). “The element of deliberation may be

proven from the circumstances surrounding the crime.” State v. Tisius, 92 S.W.3d 751, 764 (Mo.

banc 2002) (footnote omitted).

 There were multiple facts upon which the jury could have relied to find Defendant

deliberated before murdering Victim. Defendant and Victim were fighting in the days before

Victim’s murder. Six days before Victim’s death, Victim sent Rodgers a text saying Defendant

dragged him into a bedroom at his home, he was “scare[d] . . . to death” of Defendant, and he

hoped Defendant would move out soon. Two days before Victim’s death, Victim sent Rodgers a

text saying he felt he could confront Defendant face-to-face because “as scary as that can be . . . I

2
 All statutory references are to Missouri Revised Statutes 2000, as updated through the 2005 Cumulative
Supplement, unless otherwise noted.

 6
trust [Defendant] won’t hurt me.” The police found a typewritten note believed to be authored

by Victim telling Defendant they should “part ways.” An inference of deliberation can be drawn

from evidence of recent hostility between Victim and Defendant. State v. Smith, 185 S.W.3d

747, 759 (Mo. App. S.D. 2006) (noting there was hostility between the victim and the defendant

when the murder was committed in holding there was sufficient evidence to prove deliberation);

see also State v. Goodwin, 352 S.W.2d 614, 620 (Mo. banc 1962) (holding evidence of “recent

hostility between the parties” supports a finding of deliberation).

 Victim sustained so many injuries from his struggle with Defendant the medical examiner

“couldn’t count them” all. Victim’s face was swollen and bruised. His skull was fractured in

multiple places. His scalp was “profusely covered with blood.” The injuries Victim sustained

on the back of his hands and elbows were defensive wounds, indicating a prolonged struggle.

Victim had several patterned injuries on his back, neck, and scalp, which were likely caused by

an object. “While the evidence of multiple wounds is not conclusive, numerous wounds or

repeated blows may support an inference of deliberation.” State v. Cole, 71 S.W.3d 163, 169

(Mo. banc 2002) (footnote omitted).

 Further, Defendant ran the clothes, shoes, and glove he wore while murdering Victim

through the washing machine at Victim’s home. Then, he left the scene in Victim’s vehicle and

went to his friend Schwartz’s house. Deliberation can be inferred from a defendant’s attempt to

dispose of evidence and flight. See State v. Howery, 427 S.W.3d 236, 246 (Mo. App. E.D. 2014)

(disposal of evidence); Tisius, 92 S.W.3d at 764 (disposal of evidence and flight); State v.

Donahue, 280 S.W.3d 700, 704 (Mo. App. W.D. 2009) (flight).

 The jury did not have to find deliberation from this evidence; however, this evidence was

sufficient to allow such an inference to be made. State v. Johns, 34 S.W.3d 93, 111 (Mo. banc

 7
2000). Because sufficient evidence supports Defendant’s conviction for first-degree murder,

Defendant’s secondary argument his armed criminal action conviction must be reversed if his

first-degree murder conviction was in error is moot. See State v. Attwood, 294 S.W.3d 144, 145

n.3 (Mo. App. S.D. 2009).

 Point I is denied.

 Point II: Alleged Double Jeopardy Violation

 Defendant argues the trial court erred by entering a judgment of conviction against him

for both stealing and first-degree tampering because doing so violated his right to be free from

double jeopardy. Defendant raises this claim for the first time on appeal. “The protection

against double jeopardy is a constitutional right addressing the power of the State to bring a

charge against an accused.” State v. Edwards, 510 S.W.3d 374, 377 (Mo. App. E.D. 2017).

Such a claim must be raised at the earliest opportunity to be preserved for review. State v.

Horton, 325 S.W.3d 474, 477 (Mo. App. E.D. 2010). However, “an alleged double jeopardy

violation that may be determined from the face of the record is entitled to plain error review.”

State v. Hardin, 429 S.W.3d 417, 421 (Mo. banc 2014). “Plain error review is a two-step

process.” Horton, 325 S.W.3d at 477; Rule 30.20.3 “First, the appellate court must determine

whether the trial court committed an obvious error, which affected the [defendant]’s substantial

rights.” Id. “Second, if error is found in the first step, the court must determine whether that

error resulted in manifest injustice or miscarriage of justice.” Id.

 “The Double Jeopardy Clause of the Fifth Amendment, applied to the States through the

Fourteenth, provides that no person shall ‘be subject for the same offence to be twice put in

jeopardy of life or limb.’” Brown v. Ohio, 432 U.S. 161, 164, 97 S.Ct. 2221, 53 L.Ed.2d 187

(1977). The Double Jeopardy Clause affords protection from “multiple punishments for the

3
 All rule references are to the Missouri Supreme Court Rules (2016), unless otherwise indicated.

 8
same offense.” Hardin, 429 S.W.3d at 421. “In this respect, the Double Jeopardy Clause does

no more than prevent the sentencing court from prescribing greater punishment than the

legislature intended.” Edwards, 510 S.W.3d at 378 (internal quotations omitted). “Double

jeopardy analysis regarding multiple punishments is, therefore, limited to determining whether

cumulative punishments were intended by the legislature.” Kilcrease v. State, 479 S.W.3d 168,

173 (Mo. App. E.D. 2015).

 To determine whether cumulative punishments were intended by the legislature, we must

examine the statutes under which Defendant was convicted. Id. Section 569.080 (first-degree

tampering) and section 570.030 (stealing) are silent regarding whether cumulative punishment

under these sections is authorized. Thus, we are guided by section 556.041, which provides,

“When the same conduct of a person may establish the commission of more than one offense he

may be prosecuted for each such offense.” State v. Sutton, 320 S.W.3d 729, 736 (Mo. App. E.D.

2010). Section 556.041 provides four exceptions, the first of which is when “[o]ne offense is

included in the other, as defined in section 556.046.” Id.; § 556.041(1). Defendant argues first-

degree tampering is a lesser-included offense of stealing; thus, his convictions for both offenses

violate double jeopardy.

 To determine whether one offense is included in another, we apply the “same elements”

test set forth by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299,

52 S.Ct. 180, 76 L.Ed.2d 306 (1932). “Under this test, if each offense requires proof of a fact

that the other does not, then the offenses are not lesser included offenses, notwithstanding a

substantial overlap in the proof offered to establish the crimes.” Sutton, 320 S.W.3d at 736

(internal quotations and alterations omitted); see also § 556.046.1(1) (an offense is a lesser-

included offense when “[i]t is established by proof of the same or less than all the facts required

 9
to establish the commission of the offense charged”). “An offense is a lesser included offense if

it is impossible to commit the greater without necessarily committing the lesser.” Hardin, 429

S.W.3d at 422. “The elements of the two offenses must be compared in theory, without regard to

the specific conduct alleged.” State v. Derenzy, 89 S.W.3d 472, 474 (Mo. banc 2002).

 Defendant was convicted of stealing and first-degree tampering. A person commits

stealing if he or she “appropriates property or services of another with the purpose to deprive him

or her thereof, either without his or her consent or by means of deceit or coercion.” § 570.030.1,

RSMo (2013). “Appropriate” is defined by section 570.010 as “to take, obtain, use, transfer,

conceal or retain possession of.” § 570.010, RSMo (2002). Here, the jury was instructed to

consider whether Defendant stole Victim’s vehicle by taking it with the purpose to deprive him

thereof and without his consent. A person commits first-degree tampering if he or she

“[k]nowingly receives, possesses, sells, or unlawfully operates an automobile, airplane,

motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner

thereof.” § 569.080.1(2). Here, the State charged Defendant with first-degree tampering with

Victim’s vehicle by unlawfully operating it without Victim’s consent.

 Defendant argues Peiffer v. State, 88 S.W.3d 439 (Mo. banc 2002) controls here. In

Peiffer, the defendant was charged with first-degree tampering by possessing an automobile

without the owner’s consent and with stealing the automobile by retaining possession of it

without the owner’s consent. Id. at 441. The Missouri Supreme Court held that, because the

State charged the defendant with first-degree tampering based on unlawfully possessing the

automobile, the State would have to prove all the elements of first-degree tampering to establish

his guilt of stealing. Id. at 444. However, the Court noted its holding was narrow. In a footnote,

it wrote:

 10
 This case only involves first degree tampering as a lesser included offense of
 stealing when the tampering is based on possession. The Court expresses no
 opinion on whether tampering first degree is a lesser included offense of stealing
 when the tampering involves a different means of tampering, e.g., by receiving,
 selling, altering, defacing, destroying or unlawfully operating a vehicle.

Id. at 444 n.6.

 Defendant claims, like in Peiffer, the State would have to prove all the elements of first-

degree tampering to establish his guilt of stealing under these facts. However, Peiffer does not

control our analysis. In Peiffer, the State charged the defendant with two different crimes based

upon the same means—possession. Here, Defendant faced convictions for two different crimes

based upon two different means—one by taking and the other by unlawfully operating.

Defendant argues that, based on the evidence adduced at trial, it was impossible for him to have

taken Victim’s vehicle without also unlawfully operating it. However, our double jeopardy

analysis requires that we compare the elements of offenses charged without regard to the specific

conduct alleged or the evidence adduced at trial. Derenzy, 89 S.W.3d at 474; State v. McTush,

827 S.W.2d 184, 188 (Mo. banc 1992). It is not impossible to take a vehicle without unlawfully

operating it. For instance, a vehicle can be taken by towing or trailoring. Thus, Defendant’s

convictions for both stealing and first-degree tampering do not violate double jeopardy. See

State v. Wright, 383 S.W.3d 1, 6-7 (Mo. App. W.D. 2012) (holding receiving stolen property was

not a lesser-included offense of first-degree robbery where the State charged the defendant with

first-degree robbery by taking and receiving stolen property by retaining).

 The trial court did not plainly err by entering a judgment of conviction against Defendant

for both stealing and first-degree tampering.

 Point II is denied.

 11
 Point III:
 Variance in the First-Degree Robbery Charge and Lesser-Included Stealing Jury Instruction

 Defendant next argues the trial court erred by entering a judgment of conviction against

him for stealing because he was charged in the indictment with committing first-degree robbery

of Victim’s wallet and watches, but the jury was instructed, as a lesser-included offense of first-

degree robbery, on whether he stole Victim’s vehicle. Defendant did not object to the

submission of the jury instruction for stealing; rather, he requested it. We review his claim for

plain error. State v. Lee, 841 S.W.2d 648, 649 (Mo. banc 1992).

 Plain error is error that is “evident, obvious, and clear,” which results in manifest

injustice or miscarriage of justice. Rule 30.20; State v. Darden, 263 S.W.3d 760, 762 (Mo. App.

W.D. 2008). “Instructional error seldom constitutes plain error, which requires a defendant to

demonstrate more than mere prejudice.” Id. (alteration omitted). “For instructional error to rise

to the level of plain error, the trial court must have so misdirected or failed to instruct the jury

that it is apparent to the appellate court that the instructional error affected the jury’s verdict.”

Id. “In determining whether the misdirection likely affected the jury’s verdict, an appellate court

will be more inclined to reverse in cases where the erroneous instruction did not merely allow a

wrong word or some other ambiguity to exist, but excused the State from its burden of proof on a

contested element of the crime.” Id.

 “A person cannot be convicted of a crime with which the person was not charged unless

it is a lesser-included offense of a charged offense.” State v. Green, 597 S.W.3d 229, 233 (Mo.

App. W.D. 2019) (alteration omitted). “A variance between the [charging document] and

instruction is fatal because it prevents the defendant from receiving adequate notice of the crime

with which he is charged.” Lee, 841 S.W.2d at 650. However, “[a] variance alone is not

conclusive to the question of whether there is reversible error.” State v. Tillman, 289 S.W.3d

 12
282, 292 (Mo. App. W.D. 2009). A variance does not require reversal “unless it submits a new

and distinct offense from that with which the defendant was charged.” State v. Glass, 136

S.W.3d 496, 520 (Mo. banc 2004) (internal quotations omitted). Further, “unless the defendant

can be said to have been prejudiced in that he would have been better able to defend had the

[charging document] contained the [correct] phrase . . ., he should not be entitled to relief on

account of the variance.” Darden, 263 S.W.3d at 760 (alteration omitted). “A variance is

prejudicial only if it affects the [defendant]’s ability adequately to defend against the charges

presented in the [charging document] and given to the jury in the instructions.” Id.

 The indictment charged Defendant with robbing Victim of his wallet and watches, while

the lesser-included instruction for stealing asked the jury to consider whether Defendant stole

Victim’s vehicle. The charge and the lesser-included-offense instruction plainly refer to

different property. Thus, the lesser-included jury instruction for stealing submitted a new and

distinct offense from that with which Defendant was charged. However, Defendant has failed to

identify any way in which his trial strategy or ability to defend against the charge submitted to

the jury was prejudiced. Id.; State v. Goss, 259 S.W.3d 625, 627-28 (Mo. App. S.D. 2008)

(holding a variance between the charge and the jury instruction is not prejudicial if a defendant

fails to show the variance affected his or her trial strategy). Defendant’s defense was he had

Victim’s consent to take Victim’s vehicle, which contained Victim’s wallet and watches. If the

jury believed this defense, which they did not, Defendant would have successfully avoided

conviction despite the variance in the property alleged to be stolen. “In view of this theory of

defense, the variance could not have been prejudicial.” State v. Dean, 382 S.W.3d 218, 225 (Mo.

App. S.D. 2012).

 13
 Further, we note the lesser-included jury instruction for stealing Victim’s vehicle rather

than Victim’s wallet and watches that Defendant now complains of was submitted to the jury by

his trial counsel. “As our Supreme Court has explained, ‘a defendant cannot complain about an

instruction given at his request,’ and ‘a defendant may not take advantage of self-invited error of

his own making.’” State v. Holmes, 491 S.W.3d 214, 220 (Mo. App. W.D. 2016) (quoting State

v. Bolden, 371 S.W.3d 802, 806 (Mo. banc 2012)). Defendant cannot demonstrate plain error

where his trial counsel submitted the instruction he now complains about.

 Defendant has failed to establish the variance between the charge and jury instruction

was material or prejudicial. He has not demonstrated manifest injustice or miscarriage of justice.

His claim does not rise to the level of plain error.

 Point III is denied.

 Point IV: Alleged Destruction of Evidence

 Finally, Defendant argues the trial court erred by denying his motion to dismiss the

charges against him because the State destroyed evidence on his cell phone while attempting to

extract information from it and acted in bad faith. “We review a circuit court’s ruling on a

motion to dismiss a charging instrument for an abuse of discretion.” State v. Cox, 328 S.W.3d

358, 361-62 (Mo. App. W.D. 2010). “A trial court abuses its discretion when a ruling is clearly

against the logic of the circumstances before the court and is so arbitrary and unreasonable as to

shock the sense of justice and indicate a lack of careful consideration.” State v. Burns, 112

S.W.3d 451, 454 (Mo. App. W.D. 2003).

 A defendant’s right to due process is violated any time “the State suppresses or fails to

disclose material exculpatory evidence.” Illinois v. Fisher, 540 U.S. 544, 547, 124 S.Ct. 1200,

157 L.Ed.2d 1060 (2004) (citing Brady v. Maryland, 373. U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d

 14
215 (1963) and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

However, when the State fails to preserve “potentially useful evidence”—that is, “evidentiary

material of which no more can be said than . . . it . . . might have exonerated the defendant”—a

defendant must show the police acted in bad faith before we will conclude his right to due

process has been violated. Id. at 547-48 (citing Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct.

333, 102 L.Ed.2d 281 (1988)).

 This case involves the latter sort of evidence. Defendant argues the evidence on his cell

phone could have shown he was not the author of certain texts Rodgers testified she received

from him. He also argues the location data on his cell phone could have shown he was not at

Victim’s home the day of Victim’s murder. At most, Defendant could hope that, had his cell

phone been preserved, information on it would have exonerated him. See id. at 548.

 Because Defendant’s cell phone constitutes “potentially useful evidence” rather than

material exculpatory evidence, Defendant must show the police acted in bad faith to succeed in

arguing his right to due process was violated by its destruction. Id. Defendant contends he made

this showing because the police failed to document their seizure of Defendant’s cell phone upon

his arrest in a report. However, this does not establish the police acted in bad faith.

 An officer testified at trial there are multiple ways to document the seizure of evidence

besides writing it in the report, e.g., utilizing property slips or signing the evidence over to the

Cyber Crimes Unit. The officer testified Defendant’s cell phone was signed over to the Cyber

Crimes Unit after it was seized upon his arrest. Because Defendant did not give consent for the

police to search his cell phone, the Cyber Crimes Unit sent Defendant’s cell phone to a third-

party expert for extraction. An officer testified this practice is customary police procedure.

Defendant’s cell phone was damaged during the extraction process. The officer testified the fact

 15
Defendant’s cell phone was damaged was “detrimental” to the investigation because its contents

could have been used “to either exonerate [Defendant] or [establish] more evidence against

[him].” The officer testified he would have “like[d] to have the contents of [Defendant’s]

phone.” Where the police act “in good faith and in accord with their normal practice,” no due

process violation lies when “potentially useful evidence” is destroyed. Id.

 Defendant argues that, without the potentially exculpatory information on his cell phone,

he “had no means to challenge the authorship” of the texts Rodgers testified she received from

him and “was deprived of a means to prove his whereabouts on the day of the crime.” However,

the bad-faith requirement has no exceptions and applies even when “the contested evidence

provides a defendant’s only hope for exoneration and is essential to and determinative of the

outcome of the case.” Id. (internal quotations omitted).

 Defendant cites to several decisions where courts in other states have held their

constitutions require dismissal of criminal cases where “potentially useful evidence” has been

lost or destroyed, whether or not the defendant showed bad faith. He urges “[t]he Missouri

Constitution should be read to provide a similar level of protection for criminal defendants.”

However, “decisions of other state courts are not binding on us.” Doe v. Roman Catholic

Diocese of St. Louis, 311 S.W.3d 818, 823 (Mo. App. E.D. 2010); see also Craft v. Philip Morris

Co., Inc., 190 S.W.3d 368, 380 (Mo. App. E.D. 2005) (“Out-of-state appellate decisions do not

constitute controlling precedent in Missouri courts”). “[A] Missouri Supreme Court

interpretation of federal constitutional law constitutes the controlling law within our state until

either the Missouri Supreme Court or the United States Supreme Court declares otherwise.”

Doe, 311 S.W.3d at 823. The Missouri Supreme Court has declared a defendant must prove bad

faith before it can be said his due process rights were violated by the State’s destruction of

 16
“potentially useful evidence.” State v. Armentrout, 8 S.W.3d 99, 110 (Mo. banc 1999); State v.

Ferguson, 20 S.W.3d 485, 496 (Mo. banc 2000). We are bound to apply controlling law

announced by the Missouri Supreme Court. Doe, 311 S.W.3d at 824; Bradshaw v. Ashcroft, 559

S.W.3d 79, 91 (Mo. App. W.D. 2018).

 Point IV is denied.

 Conclusion

 The trial court’s judgment is affirmed.

 _______________________________
 Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.

 17